**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BRIAN L.,[1]  )
                    )
        **Plaintiff,**  )
                    )  **CIVIL ACTION**
v.              )
                    )  No. 18-2299-JWL
NANCY A. BERRYHILL,  )
Acting Commissioner of Social Security,  )
                    )
        **Defendant.**  )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the "ALJ Improperly Evaluated [Plaintiff's] Credibility" (Pl. Br. 10) (bolding omitted); relied on a faulty residual functional capacity (RFC) assessment, id. at 13-16; and failed properly to weigh the medical opinion evidence. Id. at 16-17.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the

3

burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in order as they would present when applying the sequential evaluation process. Therefore, despite the order the issues appear in Plaintiff's Brief, the court considers the ALJ's evaluation of the medical opinion evidence before it considers the allegedly faulty RFC assessment.

## II. The ALJ's Consideration of Plaintiff's Allegations of Symptoms

Plaintiff argues that in evaluating his allegations of symptoms the ALJ did not acknowledge his consistent work history or "his continued attempts to work after he became disabled" (Pl. Br. 11) and failed adequately to recognize Dr. Clark's observations that his symptoms were consistent with Machado-Joseph disease. Id. at 12. He argues that "[w]hen assessing a claimant's credibility, the focus of the ALJ should not be whether the claimant is a truthful person; instead, the focus is whether the evidence of record establishes a medical impairment 'that could reasonably be expected to produce the individual's symptoms.'" Id. (quoting Soc. Sec. Ruling (SSR) 16-3p, 2017 WL 5180304 at *11 (S.S.A. Oct. 25, 2017)). He argues that "the ALJ failed to provide any specific reasons supported by the evidence of record to support" his evaluation of Plaintiff's allegations of symptoms, and his rationale "was no more than a single, conclusory, boilerplate statement: 'the claimant's statements concerning the intensity,

4

persistence and limiting effects these symptoms [sic] are not supported by medical evidence nor any probative evidence, and are not credible to the extent they are inconsistent with the above residual functional capacity assessment.'" Id. at 12-13 (purportedly quoting R. 17). The Commissioner responds that the ALJ reasonably discounted Plaintiff's allegations of symptoms because they were not supported by objective medical evidence, were inconsistent with his reported activities, and there was a gap in treatment history. (Comm'r Br. 5-6). She argues that contrary to Plaintiff's argument the ALJ discussed his reasons for discounting Plaintiff's allegations. Id. at 6-8. In his Reply Brief Plaintiff argues that "the ALJ has misconstrued the evidence and failed to consider the entire record in reaching his credibility findings." (Reply 2).

### A.  **Standard for Evaluating Allegations of Symptoms**

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

5

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for

---

[2] Luna, Thompson, and Kepler, were decided when the term used by ALJs, practitioners, and the courts to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "a credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, based on 20 C.F.R. § 404.1529 (2017), the three-step framework set out in Luna was still the proper standard to be useed when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

### B. Analysis

Plaintiff's argument (that the ALJ did not acknowledge his consistent work history or attempts to work after his alleged disability onset date and did not adequately consider Dr. Clark's observations regarding symptoms) is an argument that the ALJ did not discuss all the regulatory factors for evaluating a claimant's allegation of symptoms. However, the opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's allegation of symptoms, the dictates of Kepler are satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'") (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)). Moreover, although certain factors and certain record evidence may support a finding contrary to that of the ALJ, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084

(citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff is correct to argue that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he … is a truthful person." SSR 16-3p, 2017 WL 5180304 at *11. However, that evaluation does involve a two-fold focus of which Plaintiff quotes the first, "whether the evidence of record establishes a medical impairment 'that could reasonably be expected to produce the individual's symptoms'" (Pl. Br. 12) (quoting SSR 16-3p), but ignores the second—"given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *11. Here, the ALJ did not focus on Plaintiff's character for truthfulness. Rather, he determined that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms" (the first focus), but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (the second focus). (R. 17).

Plaintiff's argument that the ALJ's rationale "was no more than a single, conclusory, boilerplate statement" fails for several reasons. (Pl. Br. 12). First, and most importantly, the rationale was not limited to a single boilerplate statement, but as quoted above the ALJ noted that she explained the reasons for her finding in the decision. As the Commissioner explained in her Brief, the ALJ extensively discussed the inconsistencies supporting her finding. (Comm'r Br. 6) (citing R. 16-20). Moreover, most of the

statement that Plaintiff attributed to the ALJ ("are not supported by medical evidence nor any probative evidence, and are not credible to the extent they are inconsistent with the above residual functional capacity assessment") (Pl. Br. 13) (purportedly quoting R. 17) simply does not appear in the decision at issue. The ALJ does not mention credibility at all—likely because it is not a focus of the evaluation and is prohibited by SSR 16-3p—and she did not find that no probative evidence supports Plaintiff's allegation of symptoms. Rather, as the regulations and SSR 16-3p emphasize, she focused on the inconsistencies between Plaintiff's allegation of symptoms and the evidence—"the medical evidence and other evidence in the record." (R. 17). To be sure, it may be deduced from the decision at issue that the ALJ found that Plaintiff's allegations of symptoms are inconsistent with the RFC assessed, but that was not the focus of her evaluation. She summarized her evaluation at the end of her narrative discussion and differently than Plaintiff alleges:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. As detailed above, the claimant's allegations are not entirely consistent with the longitudinal and objective medical evidence of record. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

(R. 20).

Plaintiff has shown no error in the consideration of his allegations of symptoms.

### III. Medical Opinion Evidence

Plaintiff acknowledges that the ALJ discounted Dr. Clark's treating source opinion because it was vague, it was of little value in assessing specific functional limitations, and

9

because a finding of disability is on an issue reserved to the Commissioner, but he argues that the ALJ did not note that Dr. Clark was a specialist, did not cite evidence contradicting or conflicting with Dr. Clark's opinion, and substituted his lay opinion for Dr. Clark's medical opinion. (Pl. Br. 16-17). The Commissioner points out that an ALJ is not required to discuss every regulatory factor for weighing a medical opinion but need only make clear the weight given to the opinion and the reasons for that weight. (Comm'r Br. 8) (citing Oldham, 509 F.3d at 1258). She argues that because Dr. Clark did not provide any functional limitations it was reasonable for the ALJ to recognize his opinion was vague and worthy of little weight. Id. at 9. She points out that the mere diagnosis with an impairment such as Machado-Joseph disease is not probative of disability, but the issue is what functional limitations are caused by an impairment in a particular case. Id. She points to other medical opinions in the case record cited by the ALJ and which contradict Dr. Clark's opinion, contrary to Plaintiff's argument otherwise. Id. at 10.

### A. Standard for Evaluating a Treating Physician's Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins, 350 F.3d at 1300-01; 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). After considering the regulatory factors, the ALJ must give good reasons in her decision for the weight she ultimately assigns the opinion. If she rejects the opinion completely, she must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

## **B.** **Analysis**

As the Commissioner suggests in her Brief, Dr. Kindling's opinion that Plaintiff can perform a range of light work and Dr. Coleman's opinion that Plaintiff can perform a

11

range of sedentary work both constitute record evidence which is inconsistent with Dr. Clark's opinion that Plaintiff is disabled. Therefore, as the opinions of state agency physicians who are expert in the evaluation of Social Security disability, 20 C.F.R. § 404.1527(e)(2)(ii), those opinions are "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401, and as such constitute substantial record evidence prohibiting the award of controlling weight to Dr. Clark's opinion. Therefore, the ALJ was required to assess the weight of Dr. Clark's opinion in accordance with the regulatory factors for weighing medical opinions. She did so, and Plaintiff does not argue that the reasons she provided are not supported by the record evidence, but that she should have weighed the record evidence differently and reached the contrary conclusion. The court may not reweigh the evidence and substitute its judgment for that of the ALJ. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell, 862 F.2d at 475).

Plaintiff also argues that the ALJ substituted her lay opinion for Dr. Clark's medical opinion to deny Plaintiff's claim. (Pl. Br. 16-17). As Plaintiff suggests, the Tenth Circuit has held that an ALJ oversteps her bounds when she substitutes her medical judgment for that of a treating physician. Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996). In Winfrey, Dr. Spray, a clinical psychologist, treated Mr. Winfrey, administered a battery of tests including the Minnesota Multiphasic Personality

Inventory-2 (MMPI-2), and diagnosed him with, among other diagnoses, somatoform disorder. Id. at 1021. Nonetheless, the ALJ found that Mr. Winfrey did not have a somatoform disorder, in part, because the ALJ was of the opinion "that Dr. Spray improperly used the MMPI-2 as a basis for the diagnosis." Id. at 1022. The court noted that "the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis." Id. (citing Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)). In Kemp, the court noted that

> there was not even evidence from a consulting physician retained by the agency to contradict the medical diagnosis, findings, and conclusions of her treating physician, Dr. Brown. While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own "medical expertise" over that of a physician, especially when that physician is the regular treating doctor for the disability applicant.

816 F.2d at 1476. As stated in a more recent case, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original).

The court in Kemp recognized that an ALJ "is authorized to make a final decision concerning disability." Indeed, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical

13

determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. § 404.1527(e)(2).

In this case, the ALJ made the final decision regarding disability, and she made an RFC assessment. Although she discounted part of Dr. Clark's opinion, she did not substitute her "medical expertise" for that of Dr. Clark. Rather, she considered and summarized all of Dr. Clark's opinion, discounted part of it, and explained her evidentiary bases for doing so, including relying in part on the assessments provided by the state agency medical examiners. This is not a case where the ALJ substituted her lay opinion for the medical opinion of a physician.

## IV. RFC Assessment

Plaintiff claims that in making her RFC assessment the ALJ erred in failing to assess limitations related to his "limited ability to grip, grasp, handle, or finger" (Pl. Br. 14), or to his moderate limitations in interacting with others or in concentrating, persisting, or maintaining pace.[3] Id. at 14-15 (citing R. 15, 16). She argues that the

---

[3] The Social Security Administration revised the regulations regarding evaluation of mental impairments effective January 17, 2017 before the decision in this case. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138-01, 66,160, 2016 WL 5341732 (Sept. 26, 2016), codified at 20 C.F.R. § 404.1520a (2017). (continued) …

14

ALJ's "restriction to simple, routine, repetitive tasks" cannot account for moderate limitations in concentration, persistence, or pace, id. at 15 (citing Jaramillo v. Colvin, 576 F. App'x. 870, 876 (10th Cir. 2014); and Groberg v. Astrue, 505 F. App'x. 763, 770 (10th Cir. 2012) (hereinafter Groberg II)), and that the psychologist who examined Plaintiff for the agency "opined that [Plaintiff] would have a 'minimal ability' to maintain interaction with coworkers and supervisors." Id. (citing R. 475).

The Commissioner argues that the only evidentiary support Plaintiff provides for her allegation of gripping, grasping, handling, or fingering limitations is her own testimony, but that the ALJ reasonably discounted Plaintiff's allegations of limiting symptoms. (Comm'r Br. 11). Regarding limitations in concentrating, persisting, or maintaining pace, she points out that although Plaintiff cites to unpublished opinions of the Tenth Circuit allegedly supporting her position, she does not address published opinions suggesting otherwise. (Comm'r Br. 11-12) (citing Smith v. Colvin, 821 F.3d 1264, 1268-69 (10th Cir. 2016); Vigil v. Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). Regarding social interaction, she argues the ALJ's finding that Plaintiff can occasionally interact with co-workers and supervisors and never interact with the public is reasonable and supported by evidence that Plaintiff attended races with his son, participated in church services, and attended other services in the week. Id. at 12.

---

… (continued). Although Plaintiff and the Commissioner argue using terminology from the old regulations, the ALJ applied the current regulations and used the current terminology (R. 14-15), and the court follows suit.

The Court agrees with the Commissioner. Because the ALJ properly discounted Plaintiff's allegations of disabling symptoms, Plaintiff's allegation that he has a limited ability to grip, grasp, handle, and/or finger is insufficient to require a functional limitation in that regard. Moreover, Plaintiff does not cite to record evidence demonstrating a specific manipulative limitation.

Regarding mental limitations, at the end of her step three analysis, the ALJ explained that the mild and moderate limitations she had found in the four broad areas of mental functioning (the paragraph B criteria) "are not a residual functional capacity assessment" and that her RFC assessment (which immediately followed in the decision) "reflects the degree of limitation [she] found in the 'paragraph B' mental functional analysis." (R. 16). Therefore, it is apparent the ALJ found that a mental limitation "to performing simple routine tasks with occasional interaction with coworkers and supervisors, and no interaction with the public"[4] accounts for the moderate limitations she found in the mental areas of interacting with others and of concentrating, persisting, or maintaining pace. Compare R. 16, with R. 15.

Moreover, the ALJ analyzed and explained her analysis of the mental areas of "interacting with others" and "concentrating, persisting, or maintaining pace." (R. 15). In doing so, she cited record evidence which supports her findings of moderate

---

[4] The portion of the decision quoted is the ALJ's mental RFC assessment. (R. 16). In his Brief, Plaintiff argues that the ALJ "summarily" restricted Plaintiff to "simple, routine, repetitive tasks." (Pl. Br. 15) (emphasis added). However, although the ALJ found Plaintiff capable of only unskilled work and limited him to simple routine tasks, she did not restrict him to the performance of repetitive tasks.

limitations at steps two and three of the sequential evaluation process, and that same evidence and explanation justifies her assessment of Plaintiff's mental RFC:

> In interacting with others, the claimant has a moderate limitation. In August of 2015, the claimant reported that he works on bikes and other vehicles with his son, that they attend races together, that he participates in church activities, and that he attends several different meetings during the week, including attending Sunday services. Additionally, the claimant exhibited good eye contact, a full affect, a euthymic mood, and a talkative demeanor (Ex. B6F/3-4). In February of 2016, the claimant reported that he was doing well. He reported that his energy had improved with Wellbutrin and he denied any side effects or worsened anxiety. Additionally, the claimant reported that his mood was controllable and that his panic attacks had occurred less often. An examination demonstrated cooperative behavior, normal eye contact, a euthymic mood, and good insight and judgment (Ex. B20F/5-6). However, the claimant did not receive mental health treatment again until September of 2016 and reported that his symptoms had recently worsened after he had run out of his medications. An examination demonstrated normal eye contact and normal behavior (Ex. B20F/7-8). For the aforementioned reasons, the claimant has moderate limitation in interacting with others.
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. In August of 2015, the claimant reported that he does not do much and around [sic] the house and that he relies on his wife and daughter for shopping, cooking, and cleaning. He was unable to perform serial sevens, but was able to perform serial threes without error. Moreover, he was able to perform a three-step task without any difficulty and was able to recall three of three words after a five-minute delay (Ex. B6F/3-4). In February of 2016, the claimant reported that he was doing well. He reported that his energy had improved with Wellbutrin and he denied any side effects or worsened anxiety. Additionally, the claimant reported that his mood was controllable and that his panic attacks had occurred less often. An examination demonstrated normal attention span and concentration (Ex. B20F/5-6). More recently, in September of 2016, the claimant reported that his symptoms had recently worsened after he had run out of his medications. However, an examination demonstrated normal attention span and concentration (Ex. B20F/7-8). For the aforementioned reasons, the claimant has moderate limitation in concentrating, persisting, or maintaining pace.

(R. 15).

The ALJ's findings that Plaintiff attends races, participates in church activities, attends several different meetings during the week, takes Wellbutrin which makes his mood controllable and decreases the frequency of panic attacks is record evidence which supports and justifies assessment of a mental limitation to only "occasional interaction with coworkers and supervisors." (R. 16). The findings that his treatment is sometimes sporadic and that he sometimes allows his medication to run out is record evidence which supports and justifies the assessment of a further limitation to "no interaction with the public." (R. 16). Plaintiff's argument that the ALJ should have assessed greater limitations on interaction because the psychologist who examined Plaintiff for the agency opined that he had a minimal ability to maintain interaction is without merit. Plaintiff ignores that the ALJ accorded that opinion little weight, he does not allege error in that finding, and the record evidence supports it.

The findings that Plaintiff "was unable to perform serial sevens, but was able to perform serial threes without error, … was able to perform a three-step task without any difficulty and was able to recall three of three words after a five-minute delay," and that examinations "demonstrated normal attention span and concentration" is record evidence which supports and justifies the assessment that Plaintiff has the concentration, persistence, and ability to maintain pace for "performing simple routine tasks." Id.

Plaintiff's argument that "the Tenth Circuit has previously held that a limitation to simple, repetitive work, or unskilled work does not account with precision a limitation in concentration, persistence, or pace," by its terms does not apply to such a clear explanation and analysis as is present here. And, it relies on unpublished,

18

nonprecedential opinions of the Tenth Circuit and a district court opinion from the District of Colorado[5] dealing with repetitive work and based on different facts and different areas of mental functioning than are present here and are not persuasive in the facts and circumstances of this case. In Jaramillo, the court was dealing with Dr. Mellon's opinion of moderate limitations in individual mental abilities ("carry out instructions, attend and concentrate, and work without supervision"), not with the four broad mental functional areas in the Commissioner's psychiatric review technique. 576 F. App'x at 876. And, the four broad mental functional areas applicable when Jaramillo was decided were different than those applicable in this case.

Groberg II was a decision on the claimant's appeal of the district court's denial of attorney fees pursuant to the Equal Access to Justice Act (EAJA). 505 F. App'x 763, 764. Before the EAJA appeal, the case had been decided at the Tenth Circuit, which had found among other errors that "the ALJ's evaluation of Groberg's mental impairments is unsupported by substantial evidence." Groberg v. Astrue, 415 F. App'x 65, 72 (10th Cir. 2011) (hereinafter Groberg I). The court in Groberg I found that with "a proper analysis and evaluation of [the claimant's] mental impairments, there is no reasonable probability that [he] would be denied benefits," and remanded for an immediate award of benefits. Id., 415 F. App'x at 73. On remand, the district court denied EAJA attorney fees and the

---

[5] In support of his argument Plaintiff cites "Knuutila v. Colvin, 127 F. Supp. 3d, 1146, 1151 (10th Cir. 2015)," but Knuutila is a district court opinion, not a decision of the Tenth Circuit. Moreover, the issue in Knuutila was the skill level of the work, "even when further refined to require only simple, routine, and repetitive tasks." Knuutila, 127 F. Supp. 3d at 1151 (citing Jaramillo 576 F. App'x at 876, and acknowledging in fn.2 that "The circuit courts have split on this issue.").

claimant appealed that issue to the Circuit court. In Groberg II the Circuit court found that the Commissioner's argument in Groberg I (that the ALJ's error when considering the claimant's mental impairments was harmless) was not substantially justified. 505 F. App'x at 770. Therefore, the Circuit court once again reversed the judgment of the district court and remanded for award of a reasonable attorney fee. Id. at 771. The court's statement in Groberg II regarding "simple work" or "unskilled jobs" is dicta which, even if it were based on facts like those is this case (and it is not) is not binding on this court.

Plaintiff has shown no error in the Commissioner's decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 29, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**